## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDREW J. DOUGAN,  : CIVIL NO: 1:22-CV-00462
          :
     Plaintiff, : (Judge Wilson)
          :
      v.  : (Magistrate Judge Schwab)
          :
PRIMECARE MEDICAL, INC., :
*et al*.,        :
          :
     Defendants. :

## REPORT AND RECOMMENDATION

### I.  Introduction.

Plaintiff Andrew J. Dougan complains about conditions and events that occurred and are occurring the Pike County Correctional Facility.  Currently pending are two motions to dismiss Dougan's amended complaint.  For the reasons set forth below, we recommend that the court grant one of those motions and grant in part and deny in part the other motion.  We also recommend that the court grant Dougan leave to file a second amended complaint.

### II.  Background and Procedural History.

Dougan, proceeding pro se, began this action by filing a complaint on March 29, 2022.  *Doc. 1*.  He also filed an application for leave to proceed *in forma pauperis*, which we granted. *Docs. 6, 9*.  After the defendants filed motions to

dismiss the complaint, we ordered Dougan either to file briefs in opposition to those motions or to file an amended complaint. *Doc. 30*.  Dougan elected to file an amended complaint. *Doc. 35*.

Dougan names the following defendants in his amended complaint: (1) PrimeCare Medical, Inc. ("PrimeCare"); (2) John/Jane Doe, the Chief Medical Officer ("Doe Chief Medical Officer") overseeing the Pike County Correctional Facility ("PCCF") with PrimeCare; (3) Craig A. Lowe ("Lowe"), the Warden of the PCCF; (4) Jonathan J. Romance ("Romance"), the First Assistant Warden of the PCCF; (5) Robert E. McLaughlin ("McLaughlin"), the Second Assistant Warden of the PCCF; (6) Wenzel a/k/a Kumburis ("Wenzel"), the Classification Coordinator at the PCCF; (7) John/Jane Doe #2, the Head of Security ("Doe Head of Security") at the PCCF; (8) Sergeant Forshay ("Forshay"), a sergeant at the PCCF; and (9) Officer D. Smith ("Smith"), a corrections officer at the PCCF. Dougan alleges the following in his amended complaint.

### A.  Conditions of Confinement and COVID-19.

According to Dougan, defendants PrimeCare, Doe Chief Medical Officer, Lowe, Romance, McLaughlin, and Wenzel were negligent and/or deliberately indifferent to the risk of COVID-19 at the PCCF.  Between March 2020 and the present, Dougan was housed with and around inmates who had tested positive for

COVID-19 even though he had tested negative.  And he was threatened with disciplinary action if he did not lock in a cell with his cellmate, who was COVID positive.  This caused Dougan anxiety and mental distress, and it caused him to contract COVID-19 on at least two occasions.  More specifically, Dougan was housed with COVID positive inmates in December 2020/January 2021, October 2021, and January 2022.  He tested positive for COVID-19 in January 2021, and again in January 2022.

According to Dougan, the policies and procedures at the PCCF were inadequate to contain the spread of COVID-19 at the prison, they remained so even after his several, unsuccessful attempts to seek administrative remedies, staff failed to follow state and federal guidelines to contain the spread of COVID-19, and he was continually exposed to COVID-19.  Dougan also alleges that understaffing and high turnover of staff at the PCCF led to inadequate medical care and mental-health treatment.  He also complains of restrictive conditions of confinement: 23½ hours a day locked in cell, lack of recreational and rehabilitative programming, triple bunking, lack of sanitation, and ineffective quarantine procedures. According to Dougan, prison staff can attest to those conditions as well as the extent of the multiple outbreaks of COVID-19 at the prison.

Dougan alleges that he has long COVID, and he still suffers from physical symptoms of his past infection, including chronic tiredness, depression, and

difficulty breathing with exercise.  He also alleges that he suffers from anxiety and mental distress from his conditions of confinement.

According to Dougan, in July 2022, the mask requirement at the PCCF was lifted on the basis that there was a low risk of COVID-19 in the community and no cases in the PCCF.  But a week or so later, several female inmates at the PCCF tested positive for COVID-19.  Nevertheless, the mask requirement was not reinstated.  And at about this same time and while staff were aware that there were active COVID infections among the inmate population, defendant Forshay supervised a "practice" meal procedure whereby Dougan and the inmates on his unit were required to eat their meals, six to a table sitting within a foot of each other on picnic-style bench while unmasked.  On July 30, 2022, four inmates on Dougan's unit tested positive for COVID-19.  One of the inmates that tested positive was Dougan's cellmate.  Unlike other times when a COVID-19 positive inmate was left in Dougan's cell, this time, his cellmate was immediately removed to another housing assignment to begin quarantine protocols.  Only then were inmates required to wear masks again.

## B.  Conditions in Protective Custody.

In addition to complaining about the conditions of confinement generally and as related to the risk of COVID-19, Dougan also complains that the policies

and procedures at the PCCF placed him at unnecessary risk of harm during his time in protective custody at the PCCF from January 2022 to the present. According to Dougan, defendants Lowe, Romance, McLaughlin, Wenzel, and Doe Head of Security oversee the polices of the PCCF related to security, custody, and housing at the PCCF.  Dougan was housed in the same housing unit with inmates with Maximum Security and Restricted Housing Unit classifications.  Several times, the cells of these other inmates with different classifications than Dougan were accessed at the same time as Dougan's cell, and these other inmates were allowed to approach Dougan's cell.  According to Dougan, these other inmates attempted to assault him several times; they threw urine into Dougan's cell through the open bars, to which Sergeant Schwarz can attest; and they threw objects out of other cells while Dougan used the dayroom and library.  Dougan alerted security staff, but the threats from other inmates continued.  And Dougan filed a grievance and appeal, which were denied.  According to Dougan, his confidential mental-health concerns were routed to security staff, and this bypassing of medical/mental health staff delayed treatment.

Dougan asserts that he is still housed in these conditions, and he suffers daily harassment and verbal abuse.  Officers assigned to Dougan's housing unit have written reports and initiated disciplinary proceedings relating to the harassment and threats against him.  And through the grievance process, staff are

aware of the continuing threat to his wellbeing.  Yet, the only response Dougan has received through the grievance process is that he is being housed according to the needs of the facility.  According to Dougan, the facility counselor and mental-health provider can attest to his concerns and his administrative-remedy attempts. Dougan asserts that defendants PrimeCare, Doe Chief Medical Officer, Lowe, Romance, McLaughlin, and Doe Head of Security are responsible for his welfare.

### C.  February 2022 Search and Confiscation of Legal Materials.

On February 11, 2022, defendant Smith searched Dougan's cell and removed or destroyed some of Dougan's legal materials.  Defendant Forshay oversaw the seizure of seven of Dougan's USB flash drives, which contained over 800 Word documents related to Dougan's criminal defense.  Although Dougan concedes that contraband was found during the cell search, he asserts that there was no rational purpose in confiscating his legal materials.   He asserts that the flash drives have not been returned and several paper legal documents are still missing.  Dougan also contends that he is proceeding pro se in connection with criminal defense, and the loss of his legal materials is severely detrimental to his defense.

Dougan claims that defendants Lowe, Romance, McLaughlin, Forshay, and Smith have deprived him of property without due process.  He also claims that they

have impeded his access to the courts and his ability to act effectively in his own defense.

### D.  March 2022 Search and Confiscation of Legal Materials.

On March 26, 2022, defendant Smith, supervised by defendant Forshay, moved Dougan from his housing assignment to the intake area.  Defendant Forshay then searched Dougan's cell and confiscated additional legal materials and three more flash drives.  Officer Myers told Dougan that if he "would ask them why they are doing this, they would say it is because of your charges." *Id*. at 9.  Dougan contends, however, that defendant Forshay and Smith are harassing him and retaliating against him because he filed grievances against them and against the facility and because he filed this lawsuit.

Dougan contends that based on his treatment at the PCCF, he suffers from mental-health issues, including anxiety and possibly undiagnosed depression and PTSD.  He also contends that he is still suffering from the symptoms of long COVID.  He contends that he has not received a proper evaluation or treatment.  As relief, he seeks the court to appoint an outside mental-health specialist to evaluate and treat him.  And he seeks an investigation of the PCCF as well as compensatory and punitive damages.  He also seeks the return of his legal materials.

Currently pending are two motions to dismiss Dougan's amended complaint—one motion to dismiss filed by PrimeCare and the other filed by defendants Lowe, Romance, McLaughlin, Wenzel, Doe Head of Security, Forshay and Smith (hereafter referred to as the "County Defendants"). Those motions have been briefed.

### III.  Pleading and Fed. R. Civ. P. 12(b)(6) Standards.

In accordance with Fed. R. Civ. P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss under Rule 12(b)(6), "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769–70 (M.D. Pa. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the

claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement required by Rule 8(a)(2) must give the defendant fair notice of the nature of the plaintiff's claim and of the grounds upon which the claim rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court "'must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party.'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (quoting *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015)).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  A court also need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (footnote and citations omitted) (quoting *Iqbal,* 556 U.S. at 675, 679).

A complaint filed by a pro se litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV. Discussion.

The two pending motions to dismiss address Dougan's federal claims, which he brings pursuant to 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon

10

any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

The defendants do not dispute their status as state actors for purposes of 42 U.S.C. § 1983. Thus, the inquiry is whether Dougan has plausibly alleged that the defendants engaged in conduct that violated his constitutional rights.

### A. PrimeCare.

PrimeCare is a private corporation providing medical services to the PCCF. "To state a claim against a private corporation providing medical services under contract with a . . . prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue." *Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017). We apply the standard under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), applicable to municipal entities, to private

corporations, such as PrimeCare. *See Natale*, 318 F.3d at 583–85 (applying *Monell* to a claim against Prison Health Services, a private company the provided health services to the correctional facility).

Treating PrimeCare as a municipal entity, it cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)). "[A] § 1983 claim against a municipality may proceed in two ways." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). One way for a plaintiff to present a claim against a municipality is to allege "that an unconstitutional policy or custom of the municipality led to his or her injuries." *Id*. Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019)).

To plead a claim against a municipal entity under the policy-or-custom strand of municipal liability, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman*, 914 F.3d at 798 (quoting *Monell*, 436 U.S. at 694). "'Policy is made when a decisionmaker

possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Id*. (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted)).  '"Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id*. (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

"To satisfy the pleading standard, [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).  But pleading a policy or custom is not enough. *Estate of Roman*, 914 F.3d at 798.  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Id*.

Here, Dougan has not alleged facts from which it can reasonably be inferred that a policy or custom of PrimeCare violated his rights.  Dougan does not allege any policy on the part of PrimeCare.  Although he alleges that the policies and procedures at the PCCF were inadequate to protect him from COVID-19, he fails to allege that PrimeCare was responsible for those policies.[1]  Moreover, he fails to

---

[1] Dougan alleges facts in this regard in his brief that are not contained in his amended complaint.  "Although a court on a motion to dismiss ordinarily 'must accept the allegations in the complaint as true,' it is not compelled to accept assertions in a brief without support in the pleadings." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015) (quoting *Morrow v. Balaski,* 719

allege specifically what the polices at issue were that caused an alleged violation of her rights.  Accordingly, the complaint fails to state a claim upon which relief can be granted against PrimeCare under the policy-or-custom strand of municipal liability.

Another way for a plaintiff to present a claim against a municipality is to allege that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at 105 (quoting *Estate of Roman*, 914 F.3d at 798).  This "avenue arose in the failure-to-train context, but applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its . . . officers." *Id*.

A plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline "need not allege an unconstitutional policy." *Estate of Roman*, 914 F.3d at 798.  Rather, he must show that the municipality's failure to train, supervise, or discipline "its employees 'reflects a deliberate or conscious choice.'" *Id*. (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).  In this regard, the plaintiff must show "a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest*, 930 F.3d at 106.  This requires a showing that

---

F.3d 160, 165 (3d Cir. 2013)).  "After all, a brief is not a pleading." *Id*.  Thus, we do not accept the factual assertions in Dougan's brief that do not appear in his amended complaint.

"(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id*.

To show deliberate indifference, a plaintiff usually must show a "pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62. "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and '[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability.'" *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

In limited circumstances a pattern of prior violations is not required, and "a single incident may evidence deliberate indifference sufficient to establish Monell liability." *Loomis v. Montrose Borough Police Dep't*, No. 3:20-CV-1610, 2021 WL 2865290, at *4 n.4 (M.D. Pa. July 8, 2021). "Liability in single-incident cases

depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'" *Thomas*, 749 F.3d at 223–24 (quoting *Brown,* 520 U.S. at 409). "To find deliberate indifference from a single-incident violation, the risk of [the plaintiff's] injury must be a 'highly predictable consequence'" of the defendant's failure to provide the specific training at issue. *Id*. at 225 (quoting *Connick*, 563 U.S. at 64).

In addition to deliberate indifference, a plaintiff asserting a municipal liability claim based on a failure or inadequacy of training, supervision, or discipline must also allege causation. *Elliott v. Pennsylvania Interscholastic Athletic Assoc.*, No. 3:19-CV-01934, 2022 WL 987887, at *5 (M.D. Pa. Mar. 31, 2022). "[T]he causation inquiry focuses on whether 'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect.'" *Thomas*, 749 F.3d at 226 (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)). "The alleged deficiency in a training program must be closely related to the alleged constitutional injury because '[i]n virtually every instance where a person has had his or her constitutional rights violated by a [county] employee, [said] plaintiff will be able to point to something the [county] "could have done" to prevent the unfortunate incident.'" *Forrest*, 930 F.3d at 109 (quoting *Harris,* 489 U.S. at 392).

Dougan has not alleged facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by PrimeCare caused a violation of his rights.  He does not allege a pattern of prior violations; nor does he allege facts from which it can plausibly be inferred that a constitutional violation was a highly predictable result of a lack of training, supervision, or discipline by PrimeCare.  In fact, Dougan alleges nothing in this regard.  Accordingly, the amended complaint fails to state a claim upon which relief can be granted against PrimeCare under the failure-to-train strand of municipal liability.

In sum, the complaint fails to state a 42 U.S.C. § 1983 claim upon which relief can be granted PrimeCare.[2]  Accordingly, we recommend that the court grant PrimeCare's motion to dismiss the amended complaint.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  Here,

---

[2] Because we conclude that the amended complaint fails to state a claim upon which relief can be granted, we need not address PrimeCare's argument that Dougan's claim for anxiety and mental distress should be dismissed pursuant to 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." We note, however, that although PrimeCare asserts that Dougan has not alleged any physical injury, PrimeCare does not address Dougan's allegations that he contracted COVID-19 twice and he continues to suffer from the symptoms of long COVID.

Dougan requests leave to amend if the court grants the defendants' motions to dismiss. And we cannot say that leave to amend as to PrimeCare would be inequitable or futile. Thus, we recommend that the court grant Dougan leave to file a second amended complaint as to PrimeCare.

### B.  The County Defendants.

The County Defendants move to dismiss the amended complaint. At the outset, we note that in their brief, the County Defendants make factual statements about the events at issue that are not found in Dougan's amended complaint. *See doc.43* at 13 n.3. "[A] court reviewing a motion to dismiss must examine the plausibility of 'allegations in the complaint.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 344–45 (3d Cir. 2022) (quoting *Twombly*, 550 U.S. at 555). "Factual claims and assertions raised by a defendant are not part of that scrutiny." *Id*. at 345. Thus, we will not consider the factual assertions raised by the County Defendants that are not found in the amended complaint.

### 1.  Exhaustion of Administrative Remedies.

The County Defendants halfheartedly argue that Dougan failed to exhaust administrative remedies. In this regard, they assert that Dougan "does not appear to have properly exhausted his available administrative remedies." *Doc. 43* at 17.

And they note that he did not attach documents to his amended complaint showing that he exhausted his administrative remedies.

42 U.S.C. §1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Under that section, "exhaustion is a precondition for bringing suit under § 1983." *Small v. Camden Cnty.*, 728 F.3d 265, 269 (3d Cir. 2013).  It is a "'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" *Id.* at 270 (emphasis in original) (quoting *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)).  There is no right to have a jury decide the issue of exhaustion. *Id.* at 271.  Rather, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Id.* at 269.  Failure to exhaust available administrative remedies is also an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007).  As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust available administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).  As an affirmative defense, failure to exhaust should be raised in the defendants' answer. *See* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . .").  The defense of failure to

exhaust administration remedies is appropriately brought in connection with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) only if the failure to exhaust is clear from the face of the complaint and the limited set of documents that the court can properly consider in the context of a Rule 12(b)(6) motion. *See Coutinho-Silva v. Ramirez*, No. 3:17-CV-00378, 2017 WL 5588211, at *1 (M.D. Pa. Nov. 2, 2017), *report and recommendation adopted*, 2017 WL 5588179, at *1 (M.D. Pa. Nov. 20, 2017); *Escalera v. Harry*, No. 1:15-CV-02132, 2016 WL 6694502, at *1 (M.D. Pa. Sept. 28, 2016), *report and recommendation adopted*, 2016 WL 6582065, at *1 (M.D. Pa. Nov. 7, 2016).

Here, although the County Defendants note that Dougan did not attach to his amended complaint documents showing that he exhausted administrative remedies, it is not his duty to do so. Rather, because failure to exhaust is an affirmative defense, it is the defendants burden to plead and prove that Dougan failed to exhaust available administrative remedies. And the County Defendants' suggestion that it appears that Dougan failed to exhaust administrative remedies is insufficient to satisfy their burden. In sum, it is not clear from the face of the amended complaint that Dougan failed to exhaust available administrative remedies. Thus, the amended complaint should not be dismissed for failure to exhaust.

**2.  Official Capacity Claims against the County Defendants.**

Dougan names the County Defendants in both their official and individual capacities.  Official-capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." *Monell,* 436 U.S. at 690, n. 55. In an official-capacity suit, the entity of which the officer is an agent is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief." *Id.* at 167 n.14.

Here, to the extent that Dougan names the County Defendants in their official capacities, he is bringing a claim against Pike County.  As set forth above in connection with PrimeCare, a municipality, like Pike County, cannot be held liable under 42 U.S.C. § 1983 for the unconstitutional acts of its employees on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.  Rather, to present a claim against a municipality, a plaintiff must allege "that an unconstitutional policy or custom of the municipality led to his or her injuries" or  that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest*, 930 F.3d at 105 (quoting *Estate of Roman*, 914 F.3d at 798).

Here, although Dougan contends that the policies and procedures at the PCCF were inadequate to contain the spread of COVID-19, he does not specifically allege what those policies and procedures were.  Similarly, although Dougan alleges that the policies and procedures at the PCCF placed him at unnecessary risk of harm in protective custody, but other than suggesting that as a result of a policy, he was housed with other inmates with different classification levels when he was in protective custody, Dougan does not allege what the polices were regarding housing protective inmates with other inmates.  And he does not allege that he was harmed merely because he was housed with other inmates of different classification levels.  Accordingly, the amended complaint fails to state a claim upon which relief can be granted against the County Defendants in their official capacities under the policy-or-custom strand of municipal liability.

Nor does the amended complaint state a claim upon which relief can be granted against the County Defendants in their official capacities under the failure-to-train strand of municipal liability.  Dougan does not allege a pattern of prior violations, and he does not allege facts from which it can plausibly be inferred that a constitutional violation was a highly predictable result of lack of training, supervision, or discipline by Pike County.  In fact, Dougan alleges nothing in this regard.  Accordingly, Dougan has not alleged facts from which it can reasonably be inferred that a failure or inadequacy of training, supervision, or discipline by

22

Pike County caused a violation of his rights.  In sum, the amended complaint fails to state a claim upon which relief can be granted against the County Defendants in their official capacities.

### 3.  Conditions-of-Confinement Claims.

The County Defendants contend that Dougan's conditions-of-confinement claims be dismissed for a variety of reasons.  We begin with the County Defendants' argument that Dougan fails to allege personal involvement on their part.

### a.  Personal Involvement.

Liability under Section 1983 "'cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1998)).  "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676.

A constitutional deprivation cannot be premised merely on the fact that the defendant was a supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008).  But there are two viable theories of supervisory liability. *Santiago*, 629 F.3d at 129 n.5.  Under the

23

first theory, a supervisor can be liable if he or she established and maintained a policy, practice, or custom that directly caused the constitutional harm. *Id.* Under the second theory, a supervisor can be liable if he or she participated in violating the plaintiff's rights, directed others to violate the plaintiff's rights, or as the person in charge had knowledge of and acquiesced in his or her subordinates' violations of the plaintiff's rights. *Id.*

With respect to his conditions-of-confinement claim regarding the risk of contracting COVID-19, Dougan makes a passing reference to defendants Lowe, Romance, McLaughlin, and Wenzel being "negligent and/or deliberately indifferent to the risks of COVID-19, in that they acted negligently or failed to act on several occasions." *Doc. 35* at 6. But he does not allege how these defendants were personally involved in the alleged violation of his rights. He does not show that these defendants maintained a policy, practice, or custom that directly caused a violation of his rights. Nor does he allege that these defendants participated in violating his rights, directed others to violate his rights, or had knowledge of and acquiesced in his or her subordinates' violations of his rights. *Id.* Similarly, Dougan does not allege personal involvement on the part of defendants Doe Head of Security or Smith with respect to his claim regarding the risk of COVID-19. And it "is well settled that a plaintiff cannot prove personal involvement of a supervisory defendant simply by alleging they were in charge of the employees or

institution that allowed the violation to occur." *Brewer v. Dauphin Cnty. Prison*, No. CV 1:21-1291, 2022 WL 16855566, at *2 (M.D. Pa. Nov. 10, 2022). In sum, because Dougan fails to allege personal involvement as to these defendants, we will recommend that Dougan's conditions-of-confinement claims regarding the risk of COVID-19 be dismissed as against defendants Lowe, Romance, McLaughlin, Wenzel, Doe Head of Security, and Smith. The only defendant as to which Dougan alleges personal involvement regarding COVID-19 is defendant Forshay, who, Dougan alleges, subjected him and other inmates on his unit to a practice meal procedure that led to inmates contracting COVID-19 at short time later. We address that claim against defendant Forshay below.

As to the claim regarding the conditions of confinement Dougan endured as a protective-custody inmate, Dougan alleges that defendants Lowe, Romance, McLauglin, Wenzel, and Doe Head of Security "oversee policies related to security, custody, and housing of individuals incarcerated at Pike County Correctional Facility." *Doc. 35* at 7. Dougan also alleges that defendants Lowe, Romance, McLauglin, and Doe Head of Security "are ultimately responsible for [his] welfare. *Id*. at 8. But again, these supervisory defendants are not personally involved in an alleged constitutional violation merely because they were ultimately in charge of staff that allegedly violated a prisoner's rights. And Dougan does not allege specifically how these defendants were personally involved in the alleged

25

violation of his rights. Although he mentions that these defendants oversee certain policies at the PCCF, he does not allege that these defendants maintained a policy, practice, or custom that directly caused a violation of his rights as a protective-custody inmate. Nor does he allege that these defendants participated in violating his rights, directed others to violate his rights, or had knowledge of and acquiesced in his or her subordinates' violations of his rights. Similarly, Dougan does not allege personal involvement on the part of defendant Smith with respect to the conditions of confinement in protective custody. Because Dougan fails to allege personal involvement as to any of the County Defendants, we will recommend that Dougan's conditions-of-confinement claims involving his confinement in protective custody be dismissed as against the County Defendants.

### b. Defendant Forshay.

Because it affects the applicable standard, we must determine whether Dougan was a pretrial detainee or a convicted and sentenced prisoner at the time of the events relating to his claim against defendant Forshay. On his amended complaint, Dougan checked the box indicating that he is a pretrial detainee as well as the box that he is a convicted and sentenced state prisoner. *Doc. 35* at 5. A search of the docket sheets from Pike County Court of Common Pleas reveals that Dougan is a defendant in two cases—*Commonwealth v. Dougan*, CP-52-CR-

000233-2019 (Pike Cnty.) ("2019 case"), and *Commonwealth v. Dougan*, CP-52-CR-0000613-2021 (Pike Cnty.) ("2021 case").  Based on the docket sheets[3] for these cases, Dogan was convicted in the 2019 case and sentenced in that case on August 19, 2021, but he is still awaiting trial on the 2021 case.  Thus, he was a pretrial detainee up until August 19, 2021, and after that date he was a convicted and sentenced prisoner.  Since Dougan's claim against defendant Forshay concerns events that happened around July 2022, we construe his claim as an Eighth Amendment claim.

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Glossip v. Gross*, 576 U.S. 863, 876 (2015).  The Eighth

---

[3] The docket sheets for these cases are available on the Unified Judicial System of Pennsylvania Web Portal, https://ujsportal.pacourts.us/CaseSearch (last visited May 18, 2023).  The court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  The dockets in Dougan's criminal cases are public records of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008) (taking judicial notice of court docket); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (stating that court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").

Amendment prohibits inhumane conditions of confinement. *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022).  An Eighth Amendment claim gives rise to a two-prong analysis; such a claim has both an objective component  and a subjective component. *Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) ("A properly stated Eighth Amendment claim must allege a subjective and objective element.").  "To sufficiently allege prison officials violated his Eighth Amendment rights by imposing inhumane conditions, [the plaintiff's] complaint [must] allege facts showing (1) the deprivation he endured was 'sufficiently serious,' and (2) the prison officials had a 'sufficiently culpable state of mind.'" *Clark*, 55 F.4th at 179 (quoting *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)).  Thus, "[a] claim of inhumane prison conditions may rise to the level of an Eighth Amendment violation where the prison official 'deprived the prisoner of the minimal civilized measure of life's necessities' and 'acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health.'" *Palakovic*, 854 F.3d at 225 (quoting *Parkell v. Danberg*, 833 F.3d 313, 335 (3d Cir. 2016)).

As to the subjective component of an Eighth Amendment conditions-of-confinement claim, the question is whether the defendant acted with deliberate indifference to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  "[A] prison official may be held liable under the Eighth Amendment for

denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

"[S]everal district courts [have] concluded that COVID-19 could pose a substantial risk of serious harm." *Brewer*, 2022 WL 16855566, at *3 (citing cases). But the "failure to eliminate all risk" regarding COVID-19 does not establish deliberate indifference. *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020). Thus, "even though COVID-19 has been held to be a substantial health risk, prison officials will not be deemed to have been deliberately indifferent even if they had actual knowledge of a substantial risk so long as they responded reasonably, and this holds true even if the harm ultimately occurred." *Brewer*, 2022 WL 16855566, at *3. In other words, "[n]either a failure to eliminate all risk nor an increase in the infection rate will constitute deliberate indifference; the requirement [to show deliberate indifference] becomes even more onerous if the facility implemented preventative measures." *Id.*

Here, Dougan alleges that around July 2022, and while staff were aware that there were active COVID infections among the inmate population, defendant

Forshay supervised a "practice" meal procedure whereby Dougan and the inmates on his unit were required to eat their meals, six to a table sitting within a foot of each other on picnic-style bench while unmasked.  On July 30, 2022, four inmates on Dougan's unit tested positive for COVID-19.  One of the inmates that tested positive was Dougan's cellmate.

Defendant Forshay[4] contends that Dougan has failed to allege facts suggesting that he was deliberately indifferent to the risk posed by COVID-19.  In this regard, defendant Forshay asserts that "[t]he Pennsylvania Department of Corrections adopted detailed preventative steps to mitigate the risk to inmates and staff and to control the spread of COVID-19 through the state correctional institutions." *Doc. 43* at 9–10 (footnote omitted).  And then he quotes *Wilkins v. Wolf*, No. 1:20-CV-2450, 2021 WL 1578250 (M.D. Pa. Apr. 22, 2021), which dismissed, among other claims, an Eighth Amendment conditions-of-confinement claim related to COVID-19 at the State Correctional Institution at Huntingdon.  In that case, the court provided:

> In the instant case, Defendants do not[] dispute that the COVID-19 pandemic constitutes a substantial risk of harm to inmates.  The Court, however, agrees with Defendants that Plaintiff has failed to allege facts suggesting that Defendants demonstrated deliberate indifference to the risk posed by COVID-19. As noted *supra*, the DOC has adopted detailed

---

[4] All the County Defendants as a group make this argument, but since we have concluded that Dougan alleges personal involvement only as to defendant Forshay, we set forth the argument as if made by defendant Forshay.

preventative steps to mitigate the risk to inmates and staff and
to control the spread of COVID-19 through the state
correctional institutions. The Court may take judicial notice of
this information, as it is publicly available on a governmental
website. "A review of these steps suggests that DOC officials,
including Defendants, have not acted unreasonably with respect
to the threat posed by COVID-19 and instead have instituted
measures to safeguard the entire inmate population, including
Plaintiff."

. . .

While the Court understands Plaintiff's legitimate concerns
regarding the COVID-19 pandemic, it agrees with the
numerous courts throughout the nation that have concluded that
similar allegations do not support a plausible inference that
officials have demonstrated deliberate indifference to inmates'
Eighth Amendment rights.

*Id.* at *7 (M.D. Pa. Apr. 22, 2021) (internal citations omitted).  After quoting

*Wilkins*, defendant Forshay then summarily concludes: "Based on the above,

[Dougan's] claims challenging the conditions of his confinement based on the

PCCF's response to the COVID-19 pandemic should be dismissed." *Doc. 43* at 10.

But Forshay fails to explain how *Wilkins*, which dealt with the Pennsylvania

Department of Corrections and state correctional institutions' responses to

COVID-19, applies to the PCCF.   Moreover, just because another case determined

based on the allegations in that case (and information of which the court may take

judicial notice) that the complaint in that case failed to state a claim upon which

relief can be granted does not mean that the complaint in the instant case, which is

based on different allegations, necessarily fails to state a claim upon which relief

can be granted. *Cf Hope v. Doll*, No. 1:20-CV-562, 2021 WL 9161517, at *1, 3 (M.D. Pa. Feb. 1, 2021) (noting in connection with recommending that "a hybrid civil injunctive action and habeas corpus petition" be dismissed as moot that "a conditions of confinement claim is site-specific and must examine the conditions at specific facilities at a particular point in time"), *report and recommendation adopted*, 2022 WL 2918897, at *1 (M.D. Pa. July 25, 2022).

Here, construing the amended complaint liberally, given the allegations that while staff were aware that there were active COVID infections among the inmate population, defendant Forshay supervised a "practice" meal procedure whereby Dougan and the inmates on his unit were required to eat their meals, six to a table sitting within a foot of each other on picnic-style bench while unmasked, Dougan has sufficiently alleged that defendant Forshay was deliberately indifferent to a substantial risk of serious harm to him.  Whether Dougan can prove such as well as whether he suffered any compensable injury as a result are issues that will have to wait until a later stage the case.  In sum, we conclude that the amended complaint states an Eighth Amendment claim against defendant Forshay upon which relief can be granted.

### 4.  Access-to-courts claim.

Dougan's amended complaint asserts an access-to-courts claim.[5]  "It is now established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  There are two general categories of actionable federal claims based upon an alleged denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

The first category is forward-looking claims. *Id.*  The essence of such a claim is that official action is frustrating the plaintiff in preparing or filing a legal action at the present time. *Id.*  The opportunity to litigate "has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

The second category is backward-looking claims. *Id.* at 413–14.  Such a claim does not look forward to future litigation, "but backward to a time when specific litigation ended poorly, or could not have commenced, or could have

---

[5] "The right of access to the courts is sourced from both 'the First and Fourteenth Amendments,' and is typically framed as a due process right in the inmate context, but in other contexts as 'an aspect of the First Amendment right to petition the Government for redress of grievances[.]'" *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 n.17 (3d Cir. 2018) (citations omitted).

produced a remedy subsequently unobtainable." *Id.* at 414 (footnotes omitted).
"The ultimate object of these sorts of access claims, then, is not the judgment in a
further lawsuit, but simply the judgment in the access claim itself, in providing
relief obtainable in no other suit in the future." *Id.*

The ultimate justification for recognizing each kind of access claim is the
same. *Id.* "Whether an access claim turns on a litigating opportunity yet to be
gained or an opportunity already lost, the very point of recognizing any access
claim is to provide some effective vindication for a separate and distinct right to
seek judicial relief for some wrong." *Id.* at 414–15. The right of access to the
courts "is ancillary to the underlying claim, without which a plaintiff cannot have
suffered injury by being shut out of court." *Id.* at 415. Therefore, a plaintiff must
establish an actual injury by identifying a nonfrivolous, arguable underlying claim
blocked or lost by the alleged denial of access to the courts. *Id.* The underlying
cause of action, whether anticipated or lost, is an element of the access claim. *Id.*

In the prison setting, "the injury requirement is not satisfied by just any type
of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). Rather, in the
prison setting, actual injury is the loss of, or inability to pursue, a nonfrivolous
claim that relates to a challenge, direct or collateral, to an inmate's conviction or
relates to a challenge to the conditions of confinement. *Id.* at 354–55. "Impairment
of any *other* litigating capacity is simply one of the incidental (and perfectly

constitutional) consequences of conviction and incarceration." *Id*. at 355 (italics in original).

The defendants contend that Dougan has not pleaded an actual injury. They suggest this is so because he has not alleged that he actually lost a legal claim due to the confiscation of his legal materials. To the extent that the defendants are suggesting that Dougan cannot state a claim because he has not already lost a legal claim, we reject that contention. We construe Dougan's access-to-courts claim as a forward-looking claim. He alleges that he is representing himself in connection with his criminal defense, that the confiscation of his materials is impeding his criminal defense, and he is seeking the return of his materials. Given that his claim is a forward-looking claim, Dougan does not need to allege that he already lost a claim; rather, he needs to allege that he is unable to pursue a nonfrivolous claim given the confiscation of his legal materials.

Although Dougan alleges that the confiscation of his legal materials is impeding his defense, given that he has not described even generally the nature of the materials that were confiscated or how they relate to his defense, he has not sufficiently described "the underlying arguable claim well enough to show that it is more than mere hope[.]'*Monroe v. Beard*, 536 F.3d 198, 205–06 (3d Cir. 2008) (internal quotation marks and citation omitted) (concluding that amendments to the complaint, "which alleged that [the plaintiffs] lost the opportunity to pursue attacks

35

of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous" did "not sufficiently allege that [the plaintiffs] have suffered an actual injury"); *see also Christopher*, 536 U.S. at 415 ("It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."). Thus, construing Dougan's allegations liberally given that he is proceeding pro se, we nevertheless conclude that he has failed to state an access-to-courts claim upon which relief can be granted.

### 5. Procedural Due Process Property Claim.

Construed liberally, the amended complaint asserts a claim that the confiscation of Dougan's legal materials violated his right to procedural due process. The Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Encompassed within the Due Process Clause is the guarantee of fair procedure. In raising a procedural due process claim under 42 U.S.C. § 1983, "the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (citing

*Parratt v. Taylor,* 451 U.S. 527, 537 (1981)).  Accordingly, "[t]he constitutional

violation is not complete unless and until the State fails to provide due process."

*Id.* at 126.  Therefore, in addition to first determining the scope of protection of

"life, liberty, or property" found in the Due Process Clause, "it is [also] necessary

to ask what process the State provided, and whether it was constitutionally

adequate." *Id.; Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir.2000).

"Usually, the process that is constitutionally 'due; must be afforded before

the deprivation occurs—the state must provide predeprivation process." *Brown v.

Muhlenberg Twp.*, 269 F.3d 205, 213 (3d Cir. 2001)   But "[w]hen the complained

of conduct is 'random and unauthorized' (so that state authorities cannot predict

when such unsanctioned deprivations will occur), . . . the 'very nature of the

deprivation ma[kes] predeprivation process impossible.'" *Id.* (quoting *Zinermon,*

494 U.S. at 137).  "In such situations, postdeprivation process is all that is due." *Id*.

Thus, "'[a]n unauthorized . . . deprivation of property' by prison officials does not

violate the Due Process Clause 'if a meaningful post-deprivation remedy . . . is

available.'" *Monroe,* 536 F.3d at 210 (quoting *Hudson,* 468 U.S. at 533).

Here, Dougan alleges that although contraband was found during the cell

search, there was not rational purpose in confiscating his legal materials.  Thus, as

to the legal materials, Dougan is alleging a random and unauthorized deprivation

of property.  Accordingly, he was entitled to only a meaningful post deprivation remedy.

A prison's grievance system may provide a constitutionally adequate post-deprivation remedy. *See, e.g., Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000) (concluding that the plaintiff, a former prisoner, "had an adequate postdeprivation remedy in the grievance program").  Here, Dougan does not allege facts from which it can reasonably be inferred that the grievance process at the PCCF was not available or adequate for him to raise the issue of the deprivation of his property. *See id* (holding that county prisoner had adequate post-deprivation remedy through a grievance system that permitted prisoners to complain about "any" matter that is "unjust" and provided for direct appeal to the warden).  And Dougan's failure to prevail on his grievances does not demonstrate that the grievance process was inadequate or constitutionally deficient. *See Austin v. Lehman,* 893 F. Supp. 448, 454 n. 4 (E.D. Pa. 1995) ("Of course, that Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy.").  In any event, even apart from administrative remedies, Pennsylvania law provides for an adequate postdeprivation remedy through a conversion claim. *See Brown,* 269 F.3d at 214 (finding that a Pennsylvania state-law conversion claim was a meaningful postdeprivation remedy

against a county employee given that the employee was not entitled to immunity for willful misconduct).

Because Dougan does not allege that he did not have a meaningful postdeprivation remedy, the amended complaint fails to state a procedural due process property claim upon which relief can be granted.

### 6. Retaliation claim.

Dougan claims that defendants Forshay and Smith retaliated against him by searching his cell in March 2022 and confiscating additional legal materials and flash drives. He alleges that this search and confiscation was in retaliation for his grievances against them and the PCCF as well as this lawsuit.

"Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012), *abrogated on other grounds by Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018). Retaliation claims are judged against exacting legal standards. "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

39

The defendants contend that Dougan fails to state prima facie case of retaliation because he does not allege who searched his cell, who confiscated the items, or who facilitated the search.  But Dougan alleges that defendant Smith, supervised by defendant Forshay, moved him to the intake area, and defendant Forshay searched his cell and confiscated the items in question.  Thus, we conclude that Dougan states the defendants Smith and Forshay were personally involved in the search and confiscation.

Nevertheless, we conclude that Dougan fails to state a prima facie case of retaliation against defendants Forshay and Smith because he has not alleged facts from which it can reasonably be inferred that his filing of grievances and this lawsuit was a substantial or motivating factor in the March 2022 search and confiscation.  Dougan has not alleged any facts to support his assertion of retaliation.  For example, he does not allege when he filed grievances against defendants Forshay and Smith.  Further, "[i]t is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Township of Robinson,* 303 F.3d 488, 493 (3d Cir. 2002).  But Dougan does not allege that defendants Forshay and Smith were aware of his grievances or of the instant lawsuit at the time of the March 2022 search and confiscation.  Moreover, to the extent that Dougan is suggesting that defendants Forshay and Smith retaliated against him based on

40

grievances he filed against other officers or entities, "[t]his court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity." *Robinson v. Delbalso*, No. 1:20-CV-01171, 2023 WL 2760425, at *11 (M.D. Pa. Mar. 31, 2023). Thus, "[w]ithout more, the fact that [Dougan] previously filed grievances and lawsuits against other prison employees does not 'reflect more than a sheer possibility' that the defendants acted in retaliation when they" searched his cell in March 2022 and confiscated additional legal materials. *Lawson v. Ferguson*, No. 22-2365, 2023 WL 2770820, at *2 (3d Cir. Apr. 4, 2023) (quoting *Oliver v. Roquet*, 858 F.3d 180, 192 (3d Cir. 2017)). In sum, Dougan has not alleged facts sufficient to meet the causation-prong of a prima facie case of retaliation.[6]

---

[6] "Once a prisoner has made his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that [he or she] 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'" *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002) (quoting *Rauser*, 241 F.3d at 334). Here, the County Defendants contend that even if Dougan has sufficiently pleaded a prima facie case, they would have made the same decision to search his cell for reasons of prison safety. Because Dougan fails to state a prima facie case, we need not reach this issue. We note, however, whether the defendants would have made the same decision is not clear from the face of the amended complaint. Thus, it would not be appropriate to address the same-decision defense at this stage of the proceedings. *See Palmore v. Hornberger*, 813 F. App'x 68, 71 (3d Cir. 2020) (concluding that because "when ruling on a motion to dismiss, a district court must consider only the complaint and its attached documents," to address the same-decision defense at the pleading stage "makes little sense"); *Pepe v. Lamas*, 679 F. App'x 173, 176 (3d Cir. 2017) (concluding that it was not appropriate for "the District Court to dismiss this case at the Rule 12(b)(6) stage on the basis of the 'same decision' defense").

As mentioned above, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips,* 515 F.3d at 245.  Here, Dougan requests leave to amend if the court grants the defendants' motions to dismiss.  Dougan should not be granted leave to amend his procedural due process property claim given that such claim fails as a matter of law because Dougan had a meaningful postdeprivation remedy in the form of a conversion action, and, thus, leave to amend as to that claim would be futile.  But because Dougan's other claims against the County Defendants are factually, rather than legally, insufficient, we cannot say that leave to amend would be inequitable or futile.  Thus, we recommend that the court grant Dougan leave to file an amended complaint as to the County Defendants except with regard to his procedural due process property claim.

## V.  Recommendations.

For the foregoing reasons, we recommend that the court grant PrimeCare's motion (*doc. 37*) to dismiss the amended complaint.  We further recommend that the court grant in part and deny in part the County Defendants' motion (*doc. 39*) to dismiss the amended complaint.  More specifically, we recommend that the court dismiss all the claims against the County Defendants except the Eighth Amendment claim against defendant Forshay based on the July 2022 practice meal

procedure.  We further recommend that the court grant Dougan leave to file a

second amended complaint.[7]  Finally, we recommend that the court remand this

case to the undersigned for further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within
> fourteen (14) days after being served with a copy thereof.  Such party
> shall file with the clerk of court, and serve on the magistrate judge and
> all parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to
> which objection is made and the basis for such objections.  The

---

[7] If the court adopts this recommendation and if Dougan elected to file a
second amended complaint, his amended complaint must be titled as a second
amended complaint and must contain the docket number of this case. Fed. R. Civ.
P. 10(a).  "The plaintiff is advised that any amended complaint must be complete
in all respects." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992).  "It
must be a new pleading which stands by itself as an adequate complaint without
reference to the complaint already filed." *Id*.  "In general, an amended pleading
supersedes the original pleading and renders the original pleading a nullity."
*Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019).  "Thus, the most
recently filed amended complaint becomes the operative pleading." *Id*.  In other
words, if a second amended complaint is filed, the original complaint will have no
role in the future litigation of this case.  Any second amended complaint must also
comply with the pleading requirements of the Federal Rules of Civil Procedure,
including the requirements that the complaint contain "a short and plain statement
of the grounds for the court's jurisdiction," "a short and plain statement of the
claim," and "a demand for the relief sought." Fed. R. Civ. P. 8(a)(1)–(3). Further,
"[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  "A
party must state its claims or defenses in numbered paragraphs, each limited as far
as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  And to the
extent it would promote clarity to do so, "each claim founded on a separate
transaction or occurrence . . . must be stated in a separate count." *Id*.

briefing requirements set forth in Local Rule 72.2 shall apply.  A
judge shall make a de novo determination of those portions of the
report or specified proposed findings or recommendations to which
objection is made and may accept, reject, or modify, in whole or in
part, the findings or recommendations made by the magistrate judge.
The judge, however, need conduct a new hearing only in his or her
discretion or where required by law, and may consider the record
developed before the magistrate judge, making his or her own
determination on the basis of that record.  The judge may also receive
further evidence, recall witnesses or recommit the matter to the
magistrate judge with instructions.

Submitted this 25th day of May 2023.


                                        **_S/Susan E. Schwab_**
                                        Susan E. Schwab
                                        United States Magistrate Judge